Good morning, your honors. May it please the court. Marita Riefelt on behalf of the City of Los Angeles. I'd like to reserve three minutes for rebuttal. Please go ahead to the clock. This case involves residential building permits, which on their face... I'm sorry, could you move the microphone a little closer? It's pretty quiet. The permits on their face stated a two-year expiration date. The permit holder responded here, began construction, creating the property, putting in some pilings. Then this lender stopped lending and its workers walked off the dock. Construction was then dormant for two years, after which, on the eve of lender's foreclosure, respondent filed for bankruptcy. At this time, the building permits were almost five years old. The debtor hired new staff in bankruptcy and decided to try to revive the permits by suing the city in an adversary proceeding for declaratory relief that the permits remained valid. Debtor's theory was that it obtained vested rights in the permits, which did not expire. They argued because the permits are vested, they did not expire. The bankruptcy court, in an extremely expedited proceeding, in which the motion for summary adjudication was filed two and a half weeks after the plate was served, granted summary adjudication finding debtor maintained vested rights, quote, without time limitations. The court should reverse for three main reasons. Number one, vested rights is a state law issue, and the state Supreme Court and APCO v. South Coast Regional Commission held that vested rights are limited in scope to the express terms of the permit. All subsequent court of appeal and Ninth Circuit case law have confirmed this includes a permit's stated expiration date. Number two, the court erred because there are tribal issues of material fact as to whether respondent vested in the permits passed their expiration date. I'm sorry, could you say that again? What's the second one? There are tribal issues of material fact as to whether debtor vested in the permits passed the expiration date, passed it two years, that was stated. What do you mean by vested in the permits? What do you mean by that? So their theory is that they obtained vested rights in the permits by, and it's a common law right, which, under which. I know, I know, I'm going to have to rephrase it, but so I just don't understand. I mean, I think you have a legal argument that they're wrong because the vested rights don't last past the permit expiration. Yes. What is your second one? The second thing is that there are tribal issues of fact as to whether they vested at all. So vested during the two-year period or vested under an equitable estoppel? Their theory in their briefs in the trial court and what the bankruptcy court found is that based on this theory of estoppel, the city had led them on after the two-year expiration date. Isn't that a different argument than the vested? I don't understand why you used vested in the second one. Like, I thought there was sort of a separate theory that there's some sort of estoppel based on the city's actions after the permits would have expired. That is not how they phrased it in the bankruptcy court. Their argument was that because they had vested in the permits, the city was estopped. They were entirely leaked. They did not make an independent estoppel argument. So I guess I view that then as just the first argument again. It is pretty circular. Do they make it on appeal here? Do they make, I was calling it a Schaefer argument, that there is some sort of equitable estoppel if the city led them on and they relied on it. But I wasn't sure they made it on appeal. Is it your view that they're making this argument on appeal? Well, they completely link it. Their argument in their answering brief is because the permits are vested, the city is estopped. So it's all the same. It's not an argument again. Exactly. You're almost helping them by saying there's a second one that has a fact dispute because I don't think it's on appeal. Well, I don't intend to help them, so. Okay, so if we take, as I read their briefs, that they are on appeal, they were focusing on the two, half the permit was issued, they continued working during that two years it was vested, and then the time expiration date item has no effect at all once the rights are vested. Yes. That's how I read it. That is my understanding of their argument. Okay. They argue that under this court of appeal case, Part D, AFCO's holding has no meaning because Part D makes municipal expiration dates invalid. So Part D was resting specifically on statute. Exactly. Part D was a state statutory exemption interpretation case. What we're looking at here is the terms of the permits. What's the significance of the city telling Treetop that the permits were reactivated? Yes. Because didn't Treetop expend something like $2.5 million after being told that the permits were reactivated? So if we're looking at the facts in the light most favorable to the city, as we must on summary adjudication, what happened was that a few months after the debtor began construction, the city issued a stop work order because the plans violated building standards. Work was stopped for six months, at which point they submitted revised plans and the city lifted the stop work order, reactivating the permits. And the permits had expired, but it was within the 90-day period when they could apply for an extension. But they didn't. But they didn't. And on appeal, and their theory below was that the reactivation was an extension of 180 days. And I want to argue that this fails for three reasons. It's not coherent. They're disputed facts. And it's founded on debtor's attorney's declaration, which contradicted her declaration from two weeks prior. So debtor's attorney acknowledged the city has this extension policy in the municipal code, which requires a permit holder to submit an application with a showing of unusual difficulties if they want to obtain an extension. Typically, for a project of this size, can it be completed in two years? I just can't imagine it being completed in two years, regardless of? That's really not an issue in the record. It was highly disputed between the city's building and safety superintendent, who submitted a declaration saying that reactivation is not an extension. And it's undisputed between the sides that the municipal code provides that to obtain an extension, you have to submit a request, and you have to make a showing of unusual difficulties. I'm just asking you just in practice. I mean, I just can't imagine. If a home takes a year to build, I mean, something of this size, it seems like it's a pro forma of these extensions for a project of this size. I think that whether they could have obtained an extension had they asked for one, especially when, for example, after the reactivation, the construction continued for a few months. And at that point, lenders stopped funding, the workers walked off the job, and the manager, Dustin Kunkel, did submit an application for an extension. And the city, even though the permits were expired right then in the 90-day period, the city said, hey, you have to quit this, submitted a declaration saying, you have to direct this extension request to your building inspector. But at that point, the money stopped, nobody was working, and they never did. Had they, in fact, submitted this extension request when the construction had been ongoing for that point, the law hadn't changed. It's certainly possible the city would have granted it even though it was late. It's a very different question than whether five years after the permits issued and the construction had been dormant for two years and the law had changed drastically, whether the city would then issue an extension request. So from the Ninth Circuit to the State Court of Appeal, PSLA has uniformly applied AAFCO's holding to enforce a permit's date of expiration date. The Ninth Circuit and Lakeview Development Corps v. City of South Lake Tahoe applied AAFCO's rule and reasoning to reject the developer's claim to a vested right in a permit that had issued many years prior. The Ninth Circuit held that, according to AAFCO, a developer should not be able to stop the government when the project temporally exceeds the scope of that approved. And in Lakeview, there was just an understanding that the project would be completed in a reasonable amount of time. Here, we have actually a stated expiration date on the face of the permit. Lakeview explained that the vested rights doctrine balances attention between the public interest in lower construction costs that result from providing developers with some certainty about their investments with the public interest in regulating land use. So if we agree with you that if the rights vested, they were only for the two years of the permit? Yes. Let me say it again. If we agree with you that the rights vested only for the length of the permit, do we need to revand for the bankruptcy court to figure out what the length of the permit was, given the possibility that it was somehow extended, or do we get to find that it only lasted two years, like you'd like us to say? What do you want us to do about when the permit expired? I think that you should reverse summary adjudication and remand the declaratory relief to the court, or in the alternative, the court could find that. Let me ask again. Would you like us to hold that the permits have already expired, or do we not have the power to do that, we need the bankruptcy court to do that? Let me think on that. Because I think your argument is the vested rights only last the length of the permit, and you've argued that the permits expired in March 2020, but I don't think there's a finding of that by the bankruptcy court, because they've thought this other thing. Exactly. So I don't know what you want us to do. I think you should reverse the summary adjudication and remand for the case to proceed. For further proceedings. For further proceedings. That's just my opinion. Including a new determination of if the permits have expired? Is that on the table still, or no? I think if their only theory is that vested rights continue past an expiration date, this court can certainly find that the permits expired because the AVCO and all the courts have determined that expiration dates must be enforced. Okay, so now you're saying we can say they expired. But, yes, I think you can say that they're expired. But there is a second ground for moving to summary adjudication. If I think it's a matter of law, a stated expiration date must be enforced. So, no, I agree with the court that you can find that the permits have expired. Did you want to save some time for rebuttal? I do. Thank you. Good morning, Your Honors. Jeffrey Paipoli on behalf of Tree Top Development. As an initial matter before I get into the argument, I just did want to thank the court. I recognize it was different motions panels, but for taking this case so quickly at our request. As I think the court knows from the briefing, getting a quick resolution of this case is essential in this bankruptcy case to ensure the maximum value of the bankruptcy estate, which in turn ensures maximum value to creditors. With that in mind, I think I want to just sort of level set here a little bit about what issues are on appeal and what issues are not on appeal. The bankruptcy court explicitly punted on most of the issues that the city is arguing on appeal, namely whether the permits expired under the terms of the Los Angeles Municipal Code, which is a two-year period. I don't quite understand the distinction that the city draws in their briefs between what was on the face of the permit and what's in the Municipal Code, because, of course, the scope of the temporal length of the permit is determined by the Municipal Code itself. Are you saying it's more than two years? On the face of the permits and under the Municipal Code, no, it's not more than two years. The issue is, the only issue that's on appeal, the only issue that the bankruptcy court resolved was whether under AVCO and Par D, the permits vested, that's AVCO. And if they did vest, what is the scope of that vested right? That's Par D. And I think, ultimately, this case rises and falls on Par D once we appreciate whether. . . And so if we disagree with your Par D argument and think that the vested right only lasts the length of the permit and the permit is two years, then you lose totally. I think that's right. But that's not what Par D says. Let's remember what happened in Par D, because I agree that Par D's facts are a little bit. . . There's a lot of intervening changes of the law in Par D. But Par D involved a permit that was issued in the first instance in 1972 by the city. Then that permit vested. That was never on dispute. The entire analysis in Par D depends and involves whether the developer had a vested right arising from that original 1972 permit issuance. I was struck by Par D was construing a statute in the terms of the statute, which didn't include the municipal code. How do you think, given that that's a statutory construction case, how do you think it applies to this case where we don't have a similar statute? I disagree that it's a statutory construction case in all the ways that matters. You're right. Again, remember the facts here. We had a permit issued in the first instance in 1972. Very shortly thereafter, in 1972, the original Coastal Act was passed. And the question was, do you get an exemption from that Coastal Act in 1972 because you have a vested right? So right there we know that the permit originally issued in 1972 was vested because they got that exemption. Then the permit lapsed, and in the meantime, the 1976 Coastal Act passed, at which point the question becomes, do you then get a second exemption? Coastal Commission says no, relying on their new 1976 regulation. And despite the fact that the original 1972 permit had lapsed under its own terms, the court nonetheless held that the developer had a vested right and was allowed to complete construction. The reasoning was because of the language of the statute that only listed certain ways that a vested right could change, and we don't have a statute that has such an exclusionary list here. I disagree with that reading of CARB-E. If you look at Sections 3, I think that's right about Sections 1 and 2 of the opinion. I think 3, 4, and 5 ultimately say, now, I guess what else? I think 3, 4, and 5 is what's doing the work here in the ways that matter the most. And I think the Bankruptcy Court essentially said it the right way when she confronted this issue at the summary adjudication hearing, which is AFCO establishes how you get the vested right. CARB-E governs the scope of that vested right. And now that the right is vested, and I'm paraphrasing the Bankruptcy Court a little bit here. Section 3 just says that a regulation can't do more than a statute can do, where the regulation is interpreting the statute. So I think Section 3 is just saying, let's look at the statute, not the regulation, essentially. So that's that one. But I think Section 3 says, and I'm quoting here, the right possessed by the developer was in the nature of a property right. Such a right is rooted in the Constitution. The developer's failure to exercise that vested right to its fullest extent before the enactment of the 1976 Coastal Act does not affect its vested character. So I think that language says exactly, I think that's the language that helps us here. But it goes on in context to say the holding of Section 3 is, if the legislature is without authority to retroactively deprive the party of a vested right, then the state commission by regulation can't do it either. And so it's looking at what the statute is saying, right, about how the vested right ends. It's looking at whether the vested right gave rise to a statutory exemption. And the holding was no, it doesn't. Sorry, the holding was yes, it does. But the reason why it does is because this is a vested right, the destoppel prevents the government from trampling on once it's vested and once you've incurred substantial liability. But the length of the vesting, so, I mean, don't we have AFCA saying the length of the vesting is the length of the permit? Now, in this party case, there was a special vesting statute that had different rules about when you can get rid of vesting. But the default in California, as I understand it, is the vesting only lasts as long as it's a permit. It depends on what type of vesting you're talking about. There are different types of vesting under California law. And for that, I can point you to two different sources. One is Miller and Starr, California Real Estate. I'm an out-of-state practitioner, but I understand from the California lawyers that that's essentially the Bible of California land use law. And I would point you to Chapter 21. I would also point you to the Davidson case that's cited in the brief that makes this distinction. AFCO vesting is common law constitutional vesting. And I will be the first to admit that many of these California cases use those terms in sort of a fast and loose manner. But there is a distinction. And in AFCO, sorry, turning back to your question, two points. Number one, with respect to AFCO itself, it's important to remember there was no vesting found there. AFCO just stands for the basic proposition that it sets out the test, right, and the remedy for it. Remedy is probably overstating it a bit, but how the government is prevented from infringing on that, right? So that's AFCO. I mean, first to admit, AFCO is not factually analogous to our case here. There was no vesting found, but it established what the test is for vesting. Part D deals with whether or not you can lose that right due merely to the passage of time. And I will say one other thing about the way that this case was litigated in the bankruptcy court. The city never disputed in the bankruptcy court, and I hope this came through in the brief, any facts relevant to AFCO vesting itself. They certainly disputed whether, you know, the permit had expired by its own terms. But the city's position in the bankruptcy court started and ended with the two-year expiration date of the permit. If I can interrupt, because maybe it's just me, but I was confused. I'm trying to figure out what the parties were arguing and what the bankruptcy court did. So you started off your argument saying the bankruptcy court didn't determine certain factual issues, such as whether the permit was renewed. That's right. And then later, in response to Judge Freeland's question, you said your case rises and falls with Part D. That's right. So is it, if we disagree with you on Part D and say there's no vested right here, does that mean you've waived any estoppel argument with respect to, say, after March 2020, any investments you made that there's no estoppel? I mean, that's one thing I had trouble figuring out, is are you just arguing purely an invested rights theory of all the investment you made pre-March 2020? I think that's one argument. Second, they seem to make another one as maybe an estoppel argument of the city renewed the permit effectively and would continue to rely on that and invested money. And even the bankruptcy court seemed to kind of conflate in discussing the facts. I'm just trying to figure out what we're confronted with. Sure. I think that the, and you see this all over the cases, is that the vested rights doctrine under common law and under AFCO is itself based on principles of equitable estoppel. Not promissory estoppel, by the way, which is what I believe the Schaefer case is. And that's brought out in the briefings, too, is that there's obviously a distinction between equitable and promissory estoppel in these cases. That's in the bankruptcy court briefing as well. So the way that I think the cases describe it and I think the way that we litigated it is that AFCO tells you how you get the right investing. Substantial funds, substantial work, no abandonment, no health and safety. Part D tells you about the scope of that right and whether it can survive the formal expiration of the permit deadline. Then the question is how does the government, how is the government prevented from, are you waiving any argument that there's an estoppel argument for any investments you made based on, No, supposedly not. Hold on, because red brief 55, your brief at 55 says it's immaterial whether we reasonably believe the permits were not expired based on the city's actions after March 2020. If you don't need to rely on the city's actions after 2020 for whether the permits hadn't expired, I don't understand how you can have a separate estoppel argument. I think what Judge Lee is asking about is a separate estoppel argument based, I think you're calling it promissory estoppel, based on actions the city took after March 2020. No, our position is everything here is equitable estoppel, not promissory. Okay, let's call it equitable, whatever you want to call it. A separate argument, separate from your vesting argument, a separate argument that because of what the city did after March 2020 we have a right to keep going. That argument I don't think you can maintain after you wrote in your brief that it's immaterial whether you reasonably believe the permits were as anybody's actions after March 2020. That was the, I mean that section of the brief, if we were unclear in the briefing about that I apologize, but that section of the brief dealt with a separate section of the AFCO analysis, namely good faith reliance on those permits, and at that point yes, the city was a stop from deeming them expired due to the fact that they vested before March of 2020. We're back to your vesting argument, so we're back to you need party and your argument about party or else you lose, right? There's not a separate argument separate from vesting and party. I certainly think, so first of all I'd say the court can affirm for any reason it chooses to raise. The court can do that. I want to say this about the way it was litigated below and the focus on appeal. The, again the city came in to the bankruptcy court saying that no facts relevant to AFCO vesting were material. They didn't dispute them. They didn't dispute the $14 million that Treetop spent before March of 2020. They didn't dispute that after that, you know, by the end of December of 2023 I believe, that the state or, you know, at that point there had been a bankruptcy. They didn't dispute the $25 million was in total spent at that point. So much of the analysis in the bankruptcy court did deal with facts that postdated March of 2020. We felt we had to do that in part because what AFCO says is that one of the ways you can lose the vested right and therefore your estoppel is through abandonment, which is what the city obviously pressed on their... Okay, but so we could tell you're still saying we have the vested right and it wasn't abandoned, but it's all based on the idea of vesting and party, not some separate reliance, totally apart from that based on the city's later actions. We did make that argument in the bankruptcy court, certainly. What about on appeal? Because I think you abandoned that on appeal. I don't think we did based on the facts that we presented, and obviously this court can affirm for any reason. That's all I can say about that. I think that it's... Why do you say it's immaterial whether you relied on the city's actions after March 2020? Well, again, I think that part of the brief was about good-faith reliance and not about estoppel, which is a separate element under AFCO vesting. Before the 2020? I mean, why... Well, we continued to rely in good faith on the city's representations, and I think post-March 2020, and I think that's relevant to a couple of different inquiries here. Number one, it's relevant to abandonment, certainly, which is an argument the city never pressed in the bankruptcy court but now raises for the first time on appeal. But it's also relevant to whether the city continues to be estopped. The way that we've envisioned the case, in part, is that the estoppel continues unless you abandon. So once the vested right kicks in, the city is then estopped from deeming the permits expired unless you abandon. And so, yes, those facts are relevant to estoppel, but I don't think they give rise to... I don't understand how you could have a vested rights argument that is the remedy for which the way that the government stops... is stopped from infringing on those rights comes through estoppel. You know, if AFCO's test involves good-faith reliance on validly issued permits, I don't think you can get vesting in the first instance post-March 2020 here because there wouldn't have been valid permits anymore. The other thing... Yeah, can I ask you about that? Do you concede that the permits expired in March 2020? The... By their own terms, they were limited by a two-year period. I mean, I'm not ready to concede... Again, the bankruptcy court found that none of that's before the court. That's the first thing I'll say. Because the bankruptcy court found that we had a vested right to complete the construction as described in the original permits. If we disagree with that, though, and think that your vested right only lasted the length of the permit, is there any argument that the permit lasted past March 2020? Sure. The fact that it appeared continuously as active on the city's own website until October of 2023, the fact that the city continued to send out inspectors to validate that the permits... As the bankruptcy court found, these are not actions that the city would take if they did not themselves understand the permits to be active throughout that time. So, yes, it's our belief that the permits certainly were active during that time, up until we had to file the adversary proceeding. Another thing I'd like to note about all this is that the city's arguments that they were... And this is... You're over time, so please... Oh, I apologize, Your Honors. The last thing I'll say is that the city was informed via a letter that we intended to pursue a vested rights theory as early as, I believe, early November of 2023. They knew our entire theory. We were ignored. We tried to go to the city and tell them. We tried to bring them to the table to reach a resolution of this, but we were ignored. So the idea that the city came in and only two weeks later had to respond to a summary judgment motion that they had no idea what was in it, that's simply belied by the record. Thank you. AFCO stands for more than the basic test for vesting. AFCO warns that to freeze zoning laws would seriously impair the government's right to control land use policy. As stated and restated in the Ninth Circuit case Lakeview, for the appellate to argue that it had a right to develop vested, is vested forever, is the very evil that the AFCO court said it wouldn't tolerate. So I think both the AFCO holding that vested rights are limited to the express terms of the permit and the reasoning that it would seriously impair a government right to control land use applies here. Does the court have any other questions? No, apparently not. Thank you. I want to thank both parties for their argument. This is a development LOC. This is the city of Los Angeles. And we're adjourned for today's session. All rise.
judges: IKUTA, FRIEDLAND, LEE